**Leydel WILLIS, Plaintiff,**

**v.**

**WATSON CHAPEL SCHOOL DISTRICT; Charles Knight, Individually and as Superintendent of the Watson Chapel School District; and C.C. Stuart, Individually and as Principal of the Watson Chapel Senior High School, Defendants.**

**No. PB–C–84–216.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Nov. 15, 1988.

Clayton R. Blackstock and Marsha Barnes, Little Rock, Ark., for plaintiff.

Jack A. McNulty, Pine Bluff, Ark., and Dan F. Bufford, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

The plaintiff, Leydel Willis, brings this action under Title VII of the Civil Rights Act of 1964 [1] seeking a declaratory judgment and injunction to restrain the defendants from maintaining their denial of promotions to her because of her sex. The case was tried to the Court, without the intercession of a jury, on July 18–20, 1988. Counsel for the parties have submitted post-trial briefs. The Court now renders its decision in this matter.

Plaintiff, a teacher in the Watson Chapel School District, filed her initial complaint and subsequent amended complaints alleging discrimination based upon her sex in the selection of persons to fill vacancies in eight administrative positions which occurred from the 1983–84 school year through the 1987–88 school year. In each instance, plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission and received a "Notice of Right to Sue" as a prerequisite for filing this lawsuit. In addition to the Watson Chapel School District, plaintiff has joined as defendants to this action Charles Knight, superintendent of the district since July 1982, and C.C. Stuart, who is currently an assistant superintendent in the district, and who served as principal of Watson Chapel Senior High School from 1971 to 1985.

At the outset, the Court notes that there is no question as to the Court's jurisdiction over this action. The plaintiff's complaints allege violations of Title VII of the Civil Rights Act of 1964, and the federal district court is the proper forum for the filing of such actions.

The United States Supreme Court has set forth the basic allocation of burdens and order of presentation of proof in Title VII cases alleging discriminatory treatment. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if plaintiff succeeds in proving the prima facie case, the burden then shifts to defendant to articulate some legitimate nondiscriminatory reason for the employee's rejection. Third, should defendant carry this burden, plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by defendant were not its true reasons, but were a pretext to discrimination. The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with

1. 42 U.S.C. § 2000e *et seq.*

plaintiff. *Burdine, supra.* In discharging this burden, plaintiff need not prove that her sex was the sole reason for the challenged employment decisions, but need only prove that sex was a factor in the decisions. *Danzl v. North St. Paul–Maplewood–Oakdale Independent School Dist.,* 706 F.2d 813 (8th Cir.1983).

To establish a prima facie case, plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. If plaintiff is successful in establishing a prima facie case, the burden that shifts to defendant is to rebut the presumption of discrimination by producing evidence that plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. It is sufficient if defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff. If defendant meets this burden, plaintiff, who retains the burden of persuasion, has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. She may succeed in this either directly by persuading the Court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Burdine, supra.* With these principles in mind, the Court will proceed to examine the evidence before it.

Watson Chapel School District (hereinafter WCSD) is located in Jefferson County, Arkansas.[2] During the 1987–88 school year, the district's enrollment was approximately 3,700 students. Watson Chapel Senior High School (WCSHS), which includes grades 10 through 12, had approximately 875 students enrolled. Watson Chapel Junior High School (WCJHS), which includes grades 7 through 9, had an enrollment of approximately 900 students. Dur-

ing all times relevant to this action, the district's five-member board of directors has consisted only of males. Prior to 1983, the district had no certified female administrators. Since 1983, two females have been hired as assistant principals in elementary schools.

Plaintiff contends that she was qualified for each of the administrative positions for which she applied and was not hired. Before discussing the specific positions, the Court will review plaintiff's background and experience in the field of education.

Plaintiff graduated from Merrill High School in 1954. In 1960, she received a bachelor of science degree from the University of Arkansas at Pine Bluff (UAPB, formerly Arkansas AM & N), with a major in business. Before coming to work for WCSD, plaintiff taught for three years at Merrill High School.

Plaintiff has been employed by WCSD as a secondary business education teacher for approximately twenty-five years. From the time she was initially hired until 1970, plaintiff taught at Coleman High School, which was WCSD's black secondary school.[3] Since 1970, she has taught at WCSHS. At Coleman, plaintiff sponsored a number of organizations, including the school paper and yearbook, Future Business Leaders of America, and student council. She apparently has not sponsored such organizations at WCSHS. During her years at Coleman, plaintiff served as school secretary in addition to her teaching duties. She testified that she took over the principal's duties when the principal was not present. Plaintiff also served as a school bus driver for fifteen years.

Plaintiff earned a master of science degree in education from Indiana University in 1969. Over the years, she has taken additional hours at UAPB, Ouachita Baptist University, and the University of Arkansas at Fayetteville (UAF). These hours

---

**2.** The Court is quite familiar with WCSD, having overseen the implementation of desegregation in the district in the early 1970's. *See U.S. v. Watson Chapel School District No. 24,* 446 F.2d 933 (8th Cir.1971).

**3.** Although plaintiff is black, she alleges only sex discrimination in this action. This is because WCSD has several black male administrators. Therefore, the issue of race is not before the Court.

have been in the areas of educational administration, vocational education, and counseling. In 1982, plaintiff completed a course of study by correspondence from Southwestern University, which is a non-accredited institution located in Tucson, Arizona. For her work, she was awarded a doctor of philosophy degree. Plaintiff was awarded a "Cultural Doctorate in Literature" in 1980, from World University, which is also a non-accredited institution. This was given in recognition of a number of books of poetry and short stories plaintiff has written and published.

Plaintiff is currently certified by the Arkansas Department of Education in the areas of secondary business education I and II, and as a secondary principal.

Testimony from the superintendent, Charles Knight, and from school board members indicates that the school board expects the superintendent to recruit and interview candidates for vacant positions in the district. The superintendent then makes his recommendation to the school board. The superintendent does not provide the board with the names of all applicants, but brings to the board's attention one person at a time for consideration. If the board rejects an applicant recommended by the superintendent, the superintendent will review other applicants and bring another name before the board. In most instances, the board votes to employ the first person the superintendent recommends. Knight stated that applicants are interviewed only if he believes they are qualified for the position sought. Rather than personally conducting all interviews, Knight frequently permits other administrative staff members to conduct interviews and present their recommendations to him.

At issue in this lawsuit are eight administrative positions for which plaintiff applied and for which she contends she was qualified. The Court will proceed to outline the positions separately, in chronological order, noting specifically the number of applicants for the positions and a sketch of the individuals hired for the positions.

### 1. WCJHS Principal, 1983–84

Five persons applied for this position. Plaintiff was the only female applicant. Upon the recommendation of Knight, the school board hired Charles Daniel to fill the position. Daniel had been an industrial arts teacher in WCSD for seventeen years, and he served eight years as dean of students at WCSHS. Daniel held a bachelor of science degree from UAPB, and had completed graduate hours at Auburn University and UAF. At the time he applied for this position, he had not completed his masters degree, and he did not have state certification as a secondary principal. (Plaintiff had both her masters degree and principal's certification.) Knight testified that he recommended Daniel upon assurance from Daniel's graduate professor that Daniel had completed all requirements for his certification except for taking the National Teacher's Examination. Knight said he had observed Daniel for one year and was impressed by his work as dean of students at WCSHS and his extra-curricular activities. Knight interviewed plaintiff for the position of WCJHS principal. This is the only interview she was granted with Knight in connection with the eight positions at issue here.

### 2. WCSHS Assistant Principal, 1983–84

After Daniel was hired as principal of WCJHS, the position of dean of students at WCSHS, which he had vacated, was renamed "assistant principal." Six applicants sought this position, plaintiff being the only female. Upon Knight's recommendation, the school board hired John W. Branch to fill the position. Branch had a bachelor of science degree from UAPB, and a masters degree in counseling from Henderson State University. He was certified to teach secondary social studies, and as a secondary counselor and secondary principal. He had served two years as counselor at Wabbaseka High School, and five years as principal of Vaster High School. Knight stated that he had previously served on a North Central Association team which evaluated Branch's school. Knight was impressed by what he saw, and

also by Branch's experience both as a counselor and as a principal. C.C. Stuart, who was then principal of WCSHS, interviewed plaintiff, Branch, and two others for this position. Stuart testified that he thought that Frank Anthony was the best qualified applicant for the position. However, Anthony was unable to accept the post, and Branch was Stuart's next choice. He made his recommendation to Knight, who in turn recommended Branch to the school board.

### 3. WCSHS Principal, 1985–86

In 1985, C.C. Stuart became WCSD's assistant superintendent for finance, leaving a vacancy in the principal's position at WCSHS. Twenty persons applied for the position including plaintiff, who, again, was the only female applicant. Knight recommended Charles Daniel to fill the vacancy. At this time, Daniel had served as principal of WCJHS for two years. He had completed his masters degree in educational administration and was certified as a secondary principal. Knight stated he interviewed only three or four applicants, and indicated that Daniel had shown strong leadership ability as junior high principal. Plaintiff was not interviewed. Knight stated that there were several "strong candidates" for the position.

### 4. WCJHS Principal, 1985–86

This position became open after Daniel was named principal of WCSHS. Five applicants sought the position, plaintiff being the only female to do so. Knight recommended, and the school board hired, Kenneth Ray Jones to become junior high principal. Jones held a bachelor of science degree in business administration from Henderson State University, and a masters of education degree from UAF. He was certified as a secondary social studies teacher and as a secondary principal. Jones was principal of Pea Ridge High School during the 1972–73 school year. He served as junior high school principal in Eudora from 1973 to 1975. In 1975, he became principal of the high school at Bethel, Alaska, and served there for one year. In 1976, Jones returned to Arkansas and worked for an investment banking firm until 1978. In 1978, he became principal of the school at King Cove, Alaska, and left after one year to become an instructor in computer-based education at Alaska Pacific University in Anchorage. He held this post for one year. From 1980 to 1985, Jones was an account manager for a computer firm in Alaska. Knight interviewed Jones, and recommended him because of his prior experience.

### 5. WCJHS Assistant Principal, 1985–86

Two persons, plaintiff and Gene Stewart, applied for this position. Knight recommended Stewart to the school board. Stewart received a B.S.E. degree in social studies, and an M.S.E. degree in guidance and counseling, both from Henderson State University. He is certified as a secondary social studies teacher, secondary guidance counselor, and secondary principal. He served seven years as a social studies teacher and counselor at Dollarway Junior and Senior High Schools, and seven years as guidance counselor at WCSHS. Knight interviewed Stewart, but not plaintiff. Knight testified that he recommended Stewart because of the ability he had shown as guidance counselor.

### 6. WCJHS Principal, 1986–87

Eleven applicants sought this position, plaintiff being the only female. Knight recommended, and the school board hired, Gene Stewart, who at this time had served one year as assistant principal at WCJHS. Knight was impressed by Stewart's performance as assistant principal. He indicated that Stewart was a "stablizing factor" in the school.

### 7. WCJHS Assistant Principal, 1986–87

This position became open when Stewart was hired as junior high school principal. Plaintiff and David G. Kellogg were the only two applicants. Knight recommended, and the school board hired, Kellogg to fill the position. Kellogg's resume is not included in the record, but Knight testified that Kellogg had served as assistant principal at Barton Junior High School in El Dorado. Knight interviewed Kellogg and recommended him based upon his experience.

8. *WCJHS Assistant Principal, 1987–88*

Kellogg resigned after one year to return to El Dorado. Four persons applied for the position he vacated. As in all previous instances, plaintiff was the only female applicant. Knight recommended Richard D. McLaughlin for the position. McLaughlin earned a B.S.E. degree in physical education at the University of Central Arkansas, and a masters of education degree in educational administration at UAF. He completed his masters degree during the summer of 1987, just prior to assuming this post at WCJHS. At the time he was hired by WCSD, he was certified to teach science, physical education, health education, and driver's education. Although he had completed the requirements for certification as a secondary principal, he had not been formally certified in this area. McLaughlin served as a history teacher and head football coach at Woodlawn High School for two years. He was a science teacher and coach at Redfield Junior High School for two years, and was employed by White Hall High School for eight years as a coach and driver's education teacher. His only administrative experience prior to coming to WCSHS was to occasionally fill in during the principal's absence at White Hall. Knight testified that he recommended McLaughlin because of his ability and experience.

■ The Court finds that plaintiff has established a prima facie case of sex discrimination. *See Burdine, supra; McDonnell Douglas Corp., supra.* She established that she is a member of a protected class, that she applied for and was qualified for each position at issue, and that a male was hired to fill each position. The males who were hired were recommended to an all-male school board by a male superintendent. In each instance, the school board voted to hire the first person recommended by the superintendent. It is also clear that the superintendent used subjective criteria in determining who he would recommend. *See Coble v. Hot Springs School Dist. No. 6,* 682 F.2d 721 (8th Cir. 1982).

■ The burden now shifts to defendants to articulate a legitimate nondiscriminatory reason for not hiring plaintiff for any of the administrative positions at issue. Knight testified that the persons selected had administrative experience, were more qualified than plaintiff, and had exhibited leadership ability in previous jobs. Knight stated that during his tenure at WCSD, plaintiff had not distinguished herself to him. The Court finds that defendants have met their burden of stating legitimate nondiscriminatory reasons for not hiring plaintiff.

■ The Court now comes to the crucial point for consideration in this matter: whether plaintiff has shown that the school district's proffered reasons were not the true reasons for the employment decision, either by persuading the Court that a discriminatory reason more likely motivated WCSD, or indirectly by showing that WCSD's proffered explanation is unworthy of credence. After carefully reviewing the rather lengthy record, the Court has concluded that plaintiff has met this burden with respect to certain of the positions at issue here.

In determining which applicants he would recommend to the school board, Knight used both objective and subjective criteria. In many instances, he made his ultimate decision based on subjective factors. The Court of Appeals has stated that:

[a]lthough not illegal *per se,* subjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse. The mere fact that subjective process is intended to recognize merit does not necessarily alleviate its susceptibility to discriminatory abuse. When the evaluation is in any degree subjective and when the evaluators themselves are not members of the protected minority, the legitimacy and undiscriminatory basis of the articulated reason for the decision should be subject to particularly close scrutiny by the trial judge.

*Coble, supra* at 726–27, quoting *Royal v. Missouri Highway and Transportation*

*Comm'n,* 655 F.2d 159, 164 (8th Cir.1981). In a recent opinion, *Watson v. Fort Worth Bank & Trust,* —— U.S. ——, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988), the United States Supreme Court considered discretionary promotional standards under Title VII, and concluded that subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases. Justice O'Connor, writing for the Court, stated that "the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." This Court had concluded that this is precisely what has occurred in the case at bar.

Among the subjective factors Knight used in making his selections were "leadership," "ability," and "stability." Knight indicated in his testimony that he had to "feel" good about an applicant before he could make a recommendation. The Court finds that in some instances, Knight properly used subjective criteria in reaching his decisions. For instance, in 1985, Knight recommended Charles Daniel to become principal of WCSHS. At that time, Daniel had served two years as principal of WCJHS and met state certification requirements. Knight made his recommendation based on his observations of Daniel as a principal, and the Court finds this was proper. Likewise, Knight's recommendation of David Kellogg to be assistant principal of WCJHS in 1986 was proper because Kellogg had experience as assistant principal at another junior high school of similar size.

In other instances, however, it is clear that Knight's use of subjective criteria had a discriminatory impact. In 1983, Knight recommended Charles Daniel to become principal of WCJHS. Daniel had served as dean of students at WCSHS, but this position did not require secondary principal's certification. At the time, Daniel apparently had completed requirements for his masters degree and his certification, but had received neither of them formally. Plaintiff, on the other hand, had a masters degree and a secondary principal's certificate, and she had obtained these a number of years before this vacancy was filled.

A very similar situation arose in connection with the selection of Richard McLaughlin to fill the assistant principal's position at WCJHS in 1987. McLaughlin completed his masters degree only weeks before assuming this position, and he had not formally received certification as a secondary principal. His only previous experience had been as a teacher and coach, and he had worked in the school office only on occasions when the principal was absent. Plaintiff had similar experience when she served as teacher-secretary at Coleman High School and managed the school office during the principal's absence. Despite this, along with the fact plaintiff had many more years of experience in education, Knight recommended McLaughlin for the position. Knight testified that he preferred applicants with previous administrative experience and that he recommended McLaughlin because of his experience. McLaughlin's experience, however, was not significantly different from plaintiff's experience, and the male applicant was preferred over the female.

In 1985, Knight recommended Kenneth Jones as principal of WCJHS. Jones had served for no more than two years in any one school district, and stayed only one year in most of the schools where he had been employed. The jobs Jones held the longest were outside the educational field. In fact, Jones had not worked for a school for five consecutive years before coming to WCSD. Knight indicated at one point that he looked for stability in applicants, but apparently he did not consider this factor in recommending Jones. Plaintiff, on the other hand, had been at WCSD for over twenty years and was established with her family in the community. Jones served only one year at WCJHS, and that year was somewhat less than satisfactory.

Finally, only two applicants sought the assistant principal's position at WCJHS in 1985. Of the two, Knight recommended Gene Stewart. Stewart, although certified as a secondary principal, had never served

in such a capacity. His only experience had been as a teacher and guidance counselor. Even though only two persons applied for this position, Knight interviewed only Stewart. Knight indicated on several occasions that he would give more serious consideration to plaintiff if she were to obtain administrative experience in a smaller school district. He did not require this of Stewart, however, nor did he require it of McLaughlin. In each instance, Knight preferred a male without prior administrative experience over a female without prior administrative experience.

Defendants argue that there are female administrators in the district, listing an administrative assistant in accounting, the cafeteria director, and two elementary school assistant principals. The first two positions do not require state certification, and while they may be classified as administrative positions on an organizational chart, the Court does not consider them comparable to the types of positions plaintiff is seeking here. The two elementary assistant principals, Gloria Reed and Phyllis Shepherd, have been hired since plaintiff instituted this action. The elementary principals are apparently male. Although Knight testified that plaintiff's lawsuit had nothing to do with the hiring of Reed and Shepherd, and while the Court does not doubt the qualifications of these women, it is significant that WCSD had no certified female administrators until after plaintiff filed this action.

The Court is satisfied that plaintiff has shown that the legitimate nondiscriminatory reasons offered by defendants for not hiring plaintiff for an administrative position were a pretext to discrimination, and plaintiff should be granted relief.

■ The Court does not find that monetary damages, either compensatory or punitive, are appropriate in this case. Because of the numerous positions involved here and the varying salaries of each position, it would be impossible to calculate compensatory damages. The Court has determined, under the disparate impact analysis, *Watson, supra,* that the employment practices used by WCSD were not adopted with a discriminatory motive, and therefore without malice, so punitive damages will not be awarded.

■ The Court, however, does hereby direct the school board of WCSD to grant plaintiff's application for the next secondary administrative position which becomes available in the district. Plaintiff meets all requirements for such a position, and in view of her many years of teaching experience and service to the district, the Court is of the opinion that she should be given the opportunity to utilize her training and demonstrate her ability to function in an administrative position.

Finally, the Court wants to state for the record that it has maintained an avid interest in the affairs of WCSD since its involvement with the desegregation problems in the district in the 1970's. The Court wants to compliment the members of the school board, the superintendent, the administrators, and faculty of the district for overcoming very serious problems and turning WCSD into an outstanding educational facility. The Court was very impressed by the faculty and board members who testified at the trial of this case, and extends its congratulations and hope that WCSD will continue to provide quality education to the children of Jefferson County for many years to come.

A separate judgment will be entered in accordance with this opinion.